IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00901-KDB-DCK

| | |
|---|---|
| **KANE ZORAN MEDIC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HULL PROPERTY GROUP, LLC, ET AL.,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

Plaintiff Kane Medic alleges that his civil rights were violated when Defendants permanently banned him from entering the Northlake Mall in Charlotte, North Carolina. Now before the Court are Defendants Hull Property Group, LLC's ("Hull"), City of Charlotte's ("City"), Officers Tolman and Travis', and Spinoso Real Estate Group's ("Spinoso") Motions to Dismiss (Doc. Nos. 31, 40, 51, 67), and Plaintiff's Motion for Default Judgment (Doc. No. 46) as to Defendant Professional Security Consultants. The Court has carefully considered these motions and the parties' briefs and exhibits in support and opposition. For the reasons discussed below, the Court will **GRANT** Defendants' Motions to Dismiss and **DENY** Plaintiff's Motion for Default Judgment.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th

Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Further, this Court is required to liberally construe pro se complaints, which are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*,

901 F.2d 387 (4th Cir. 1990); *see also Ashcroft*, 556 U.S. at 684 (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Kane Medic is a former employee of Go Green CBD at its store located in Northlake Mall. Consolidated Amended Complaint ("CAC"), Doc. No. 12 at 3. In May 2023, Medic alleges he was confronted by Defendant Kristin Tolman, a Charlotte-Mecklenburg Police Department ("CMPD") police officer, and Security Supervisor J. Acosta, an employee of Defendant Professional Security Consultants, Inc. ("PSC" or "mall security"). *Id.* After the confrontation, Medic alleges that Tolman authored a "false" email report about the interactions they had between May 28–29, 2023, including that he demonstrated "aggressive" and "taunting" behavior. *Id.* She sent the email to PSC. Doc. No. 12-5 at 1. Less than two weeks later, on July 9, 2023, uniformed CMPD officers Tolman and Travis allegedly contacted mall security when Medic refused to stop recording them inside the mall. CAC at 3; *see also* Doc No. 12-9. Mall security arrived and escorted Medic back to his workplace. CAC at 3. PSC employees Coleman and Acosta then issued him a Criminal Trespass Warning, which permanently banned him from the mall, citing a violation of the mall's code of conduct, including recording the officers inside the mall. Doc. No. 12-10 at 1.

As a result, Medic lost his job. CAC at 3. In November 2025, Medic filed this action, alleging four causes of action including *Monell* liability as to Defendant City, and First Amendment Retaliation, violation of Procedural Due Process under the Fourteenth Amendment, and intentional infliction of emotional distress as to all Defendants. *Id.* at 4. In January 2026, Medic sent an email to PSC asking if he was still banned and, if so, who would be enforcing the ban. Doc. Nos. 12-11, 12-12. PSC responded that the ban was permanent and would be enforced by "mall

management, [PSC], and CMPD." Doc. No. 12-12. Finally, after filing his Fourth Amended Complaint (the CAC), Defendants Hull,[1] Officers Tolman and Travis, City, and Spinoso[2] each moved to dismiss the claims against them. Medic has responded, and the motions are ripe for this Court's review.

## III. DISCUSSION

Section 1983 imposes civil liability on any person who, acting under color of state law, deprives another of a right secured by the Constitution or federal law. The statute does not itself create substantive rights; rather, it provides the vehicle through which such rights may be vindicated. A plaintiff must therefore (1) identify the specific constitutional or federal right allegedly violated, (2) demonstrate that the right was in fact violated, and (3) establish that the deprivation was caused by a defendant acting under color of state law. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Although not itself a source of substantive rights, § 1983 provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

[1] Hull is the current property manager for Northlake Mall. Doc. Nos. 12 at 2; 32 at 2.

[2] Spinoso is Northlake Mall's former property manager and managed it during the relevant period. Doc. No. 67-1 at 4.

Thus, § 1983 affords a remedy to a plaintiff who can show that a person acting under color of state law deprived him of a right secured by the Constitution or federal law, including certain statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1, 4–5 (1980); *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022).

**A. Section 1983 claims as to Defendant Hull**

Medic alleges that Hull retaliated against him for exercising his First Amendment right to free speech and violated the Substantive Due Process Clause of the Fourteenth Amendment when, in early 2026, PSC told him that Hull would, in conjunction with others, enforce the permanent ban against him should he attempt to return to the privately owned Northlake Mall.

However, like many constitutional protections, the Free Speech Clause of the First Amendment restricts only governmental interference with speech, not the actions of private parties. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019); *see also White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 191 (4th Cir. 2022). "Similarly, the Fourteenth Amendment, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38 (1982) (first citing *Civil Rights Cases*, 109 U.S. 3, 11 (1883); and then citing *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Courts must therefore ensure that "constitutional standards," such as the First and Fourteenth Amendments, are enforced only when the challenged conduct is fairly attributable to the State, "a requirement known as state action." *White Coat Waste Project*, 35 F.4th at 189 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (internal quotations and additional citation omitted). *See also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

Section 1983 contains a related but distinct requirement: the defendant must have acted "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The statute thus applies only to a person who, by virtue of some state-created authority, deprives another of a constitutional or statutory right. *White Coat Waste Project*, 35 F.4th at 189–90; *see also* 42 U.S.C. § 1983. A corporation acts "under color of state law" when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 190 (quoting *West*, 487 U.S. at 49) (additional citation omitted).

Although the constitutional state action requirement and the statutory color of law requirement are technically separate, courts treat them as functionally identical. *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). Thus, the central question under § 1983 mirrors the state-action inquiry, namely, whether the alleged violation of federal rights is "fairly attributable to the State." *Rendell-Baker*, 457 U.S. at 838. Often, this turns on whether there is a "close nexus" between the government and the challenged conduct. *Brentwood Acad.*, 531 U.S. at 288, 295 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Generally speaking, however, "private corporations [like Hull] are not the government …." *White Coat Waste Project*, 35 F.4th at 190 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721–22 (1961)) (additional citation omitted).

Therefore, Hull may be subject to constitutional claims only if it functioned as a "de facto state actor[]" in possibly upholding the ban prohibiting Medic from returning to the mall. *See Davison v. Facebook, Inc.,* 370 F. Supp. 3d 621, 628 (E.D. Va. 2019), *aff'd,* 774 F. App'x 162 (4th Cir. 2019). Under controlling precedent, a private party is not transformed into a state actor "unless the state has so dominated such activity as to convert it into state action; '[m]ere approval of or acquiescence in the initiatives of a private party' is insufficient." *Id.* (quoting *DeBauche v. Trani*,

191 F.3d 499, 507 (4th Cir. 1999)) (additional citation omitted). Such domination exists only where "the State has exercised coercive power or has provided such significant encouragement that the choice must in law be deemed to be that of the State." *Id.* (quoting *DeBauche,* 191 F.3d at 507) (internal quotation marks and alteration omitted).

The Supreme Court has not adopted a single, unified test for determining when private conduct constitutes state action. However, the Fourth Circuit has identified "four exclusive circumstances under which a private party can be deemed to be a state actor." *Id.* (quoting *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993)). They include:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*Andrews,* 998 F.2d at 217.

Importantly, "[i]f the conduct does not fall into one of these four categories, then the private conduct is not an action of the state." *Id.*

Measured against these four categories, Medic's allegations fall well short of alleging state action. Here, Medic's theory rests on a single statement, relayed to him by PSC, that any ban would be enforced by "mall management, [PSC], and CMPD." Doc. No. 12-12. That secondhand assertion does not satisfy any of the four *Andrews* circumstances.

First, Medic alleges no facts suggesting that the State coerced Hull into acting. The criminal trespass warning and permanent ban were issued by PSC (a private security company) for asserted violations of the mall's "Code of Conduct." Doc. No. 12-10 at 1. Nothing indicates that the City or CMPD compelled Hull to adopt, maintain, or enforce that ban. At most, Medic alleges that a state actor *might* participate alongside private parties in enforcing a privately issued ban, which

reflects no more than the "mere approval of or acquiescence in the initiatives of a private party" that is insufficient to establish state action. *DeBauche*, 191 F.3d at 507 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). In other words, the actions of a private company are not transformed into state action simply because the police might be called to assist in removing someone who has refused to leave the premises.

Second, Medic does not allege that the State sought to evade a clear constitutional duty by delegating it to Hull. The CAC contains no allegation that Defendant City assigned any of its obligations to Hull or used Hull to accomplish indirectly what the Constitution forbids it from doing directly.

Third, excluding a patron from a privately owned shopping mall is not a function "traditionally and exclusively" reserved to the State. To the contrary, the Supreme Court has held that a privately owned shopping center does not lose its private character or assume the constitutional obligations that constrain only the State merely by opening its premises to the public. *Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972) (no First Amendment right to distribute handbills in a privately owned shopping center, explaining that a property does not "lose its private character merely because the public is generally invited to use it for designated purposes."); *Hudgens v. NLRB*, 424 U.S. 507, 520–21 (1976) (first amendment does not guarantee a right to free expression on private property). Under this line of authority, a private entity only takes on the character of a state actor where it assumes "the full spectrum of municipal powers" and "stood in the shoes of the State." *Lloyd,* 407 U.S. at 569. Northlake Mall is an ordinary private shopping center, not a company town, and the power to control access to it is a private prerogative rather than a delegated sovereign power.

Finally, Medic does not plausibly allege that Hull itself committed an unconstitutional act in the course of enforcing the rights of a private citizen. Hull did not begin managing Northlake Mall until 2025, approximately two years after the ban was issued, and Medic identifies no conduct by Hull beyond the secondhand statement that Hull would be among those enforcing an already existing ban. Doc. Nos. 12 at 2; 32 at 2.

In sum, Medic has not alleged any facts showing that Hull's conduct is fairly attributable to the state under any recognized state action theory. Accordingly, his § 1983 claims against Hull fail and must be dismissed.

**B. Section 1983 claims as to Defendant Spinoso Real Estate Group**

Medic asserts the same First and Fourteenth Amendment claims against Spinoso Real Estate Group that he brings against Hull. As discussed above with respect to Hull, Spinoso is a private entity, and Medic's constitutional claims against it are cognizable under § 1983 only if Spinoso's challenged conduct is fairly attributable to the State under one of the four *Andrews* categories.

However, Medic's claims against Spinoso fail at an even more fundamental level because he alleges no conduct by Spinoso at all. The CAC identifies no act by Spinoso relating to the trespass warning, the permanent ban, or any other matter, and Medic does not allege that he had any interaction with Spinoso. *See* CAC. Where a plaintiff identifies no action by a defendant, he necessarily cannot show that the defendant's conduct was coerced by the State, reflected a delegated public function, or otherwise satisfied any recognized state action theory. *See Andrews*, 998 F.2d at 217. Absent any alleged conduct by Spinoso, much less conduct fairly attributable to the State, Medic cannot establish the state action element essential to his § 1983 claims against Spinoso, and those claims will be dismissed.

### C. Section 1983 claims as to Officers Tolman and Travis

Medic asserts the same claims against Officers Tolman and Travis as he did against Hull and Spinoso. As with corporations, a police officer acts "under color of state law" when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *White Coat Waste Project*, 35 F.4th at 190 (quoting *West*, 487 U.S. at 49) (additional citation omitted); *see also* 42 U.S.C. § 1983. Section 1983 liability attaches only when an officer acts under color of state law; conduct undertaken "in the ambit of [an officer's] personal, private pursuits" does not qualify. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Rogers v. Fuller,* 410 F. Supp. 187, 191 (M.D.N.C. 1976)).

Although indicia of official authority—such as "being on duty, wearing a uniform, or driving a patrol vehicle"—may be relevant to the inquiry, "they are not dispositive." *White v. City of Greensboro*, 532 F. Supp. 3d 277, 309 (M.D.N.C. 2021), *vacated on reconsideration in part on other grounds,* 586 F. Supp. 3d 466 (M.D.N.C. 2022) (citing *Revene,* 882 F.2d at 872). In other words, the controlling consideration is the nature of the act performed, not the officer's status or outward appearance. *Revene,* 882 F.2d at 872 (quoting *Monroe v. Pape,* 365 U.S. 167, 184–87 (1961), *overruled on other grounds by Monell v. Dept. of Soc. Serv.,* 436 U.S. 658 (1978)).

Here, Medic alleges that Officer Tolman "falsely accused Plaintiff of aggressive behavior and 'taunting'" in an email she sent to PSC. CAC at 3. The email, which described Medic's interactions with mall security on May 28-29, 2023, is attached to the CAC as an exhibit, and states that after observing confrontations between Medic and mall security supervisor J. Acosta on May 28, Officer Tolman "suggested [Medic] let the situation go." Doc. No. 12-6. Medic alleges that the email was later used to justify PSC's issuance of the permanent ban. CAC at 3. He also alleges

that while in uniform, Officer Travis "instruct[ed] Plaintiff to stop recording and threaten[ed] to call security if Plaintiff did not comply." Doc. Nos. 12-8; 12-9.

The Court is skeptical that on these facts, Medic has sufficiently pleaded that Officers Tolman and Travis were acting under color of state law during their interactions with him. Nothing in the CAC suggests the officers were performing any police function at the time; they may have only been present at the mall for personal reasons and, like any citizen, may simply not have wanted to be filmed going about their own business. Even so, construing the CAC and its exhibits broadly and in Medic's favor, the Court assumes without deciding that the threshold color of law element can be satisfied. The Court therefore turns to whether Medic has plausibly alleged a violation of his First and Fourteenth Amendment rights.[3]

**1. First Amendment Retaliation**

In his First Amendment retaliation claim, Medic contends that CMPD officers violated his rights by contacting mall security after observing him recording them. *See* CAC at 3. To state a claim for First Amendment Retaliation, a plaintiff must plausibly allege: (1) he "engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [Plaintiff's] protected activity and the defendants' conduct." *Buxton v. Kurtinitis*, 862 F.3d 423, 427 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th

[3] To the extent that Plaintiff asserts his § 1983 claims against Tolman and Travis in their official capacities, those claims will be dismissed as duplicative of the *Monell* claim against City because "an official capacity claim ... is a claim against a government entity of which an agent is an officer." *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 591 (D. Md. 2023) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (additional citations omitted). *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against [the defendant] in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

Cir. 2005)) (additional citation omitted). In early 2023, just months before Medic's encounter with CMPD, the Fourth Circuit held that recording police while they are engaged in police activity is conduct protected by the First Amendment. *See Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 681 (4th Cir. 2023) (holding that recording police officers during a traffic stop is a protected activity under the First Amendment because gathering information about police encounters contributes to public discussion of governmental affairs). *See also Garcia v. Montgomery Cnty., Maryland,* 145 F. Supp. 3d 492, 508 (D. Md. 2015) (finding a constitutional right to record "public police activities," including recording police during the arrest of a third party, if done "peacefully and without interfere[ence]"); *Williams v. Mitchell*, 122 F.4th 85, 89–91(4th Cir. 2024) (First Amendment protected the filming of a police officer investigating a trespassing charge).

As a threshold matter, Medic does not allege that Officers Tolman and Travis were conducting any police activity, such as arresting, detaining, or questioning a suspect, when he began filming them inside the mall. Nor does Medic cite, and the Court has not located, any authority suggesting that the First Amendment protects the recording of a police officer who is not performing police functions, but is merely in a public place in uniform.. Although "recording police encounters creates information that contributes to discussion about governmental affairs," *Sharpe,* 59 F.4th at 681, the same cannot be said about recording police officers who are not involved in the activities of policing. The Court therefore concludes that Medic has not plausibly alleged that he was engaged in protected First Amendment activity when he recorded the officers.

Even assuming, however, that Medic could satisfy the first element, the claim still fails because he has not plausibly alleged that either officer took an action that adversely affected his First Amendment rights or that any such action caused him a cognizable injury. Officer Tolman's only conduct—occurring more than a week before the recording incident—was authoring an email

describing her observations of Medic's altercation with PSC supervisor Acosta, and allegedly advising him to "let the situation go." Doc. Nos. 12-5, 12-6. Officer Travis' only alleged conduct was instructing Medic to stop recording and stating that he would call mall security if he did not comply. Doc. Nos. 12-8, 12-9.

Medic's conclusory assertion that Tolman's email was later "used to justify" PSC's ban does not establish causation. Indeed, the CAC attributes the decision to ban him to PSC staff (specifically employees Coleman and Acosta, with whom he had prior altercations including allegedly calling Acosta a "small-headed bald fry") rather than to either officer. *See* Doc. Nos. 12-5, 12-10. At most, Medic alleges that the officers' conduct preceded a private entity's independent decision, which is insufficient to satisfy the causal relationship required for First Amendment retaliation. *See Buxton*, 862 F.3d at 427. Neither Tolman's email, which is not referenced in the ban, nor Travis' instruction to stop recording deprived Medic of any right, and the adverse action of which he complains–the permanent ban and the resulting loss of his employment—was imposed by PSC for asserted violations of the mall's code of conduct, including filming the officers inside the mall. Doc. No. 12-10 at 1. Medic therefore fails to state a claim for First Amendment retaliation against Officers Tolman and Travis.

**2. Due Process Under the Fourteenth Amendment**

Medic next alleges that his right to procedural due process was violated when he was permanently banned from Northlake Mall without notice or opportunity to be heard. The threshold question is therefore whether Medic had a liberty or property interest in access to the mall such that the Fourteenth Amendment required process before the ban issued. He did not.

"The Fifth Amendment [as applied to the States through the Fourteenth Amendment] provides that [n]o person shall be … deprived of life, liberty, or property, without due process of

law." *Kerry v. Din*, 576 U.S. 86, 90 (2015). "Although the amount and quality of process that our precedents have recognized as 'due' under the Clause has changed considerably since the founding, […] it remains the case that no process is due if one is not deprived of 'life, liberty, or property.'" *Id.* (first quoting *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 28–36 (1991); and then quoting *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011)).

To succeed on a procedural due process claim, a plaintiff must therefore allege: "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Crowder v. Burress*, 813 F. Supp. 3d 564, 570 (W.D.N.C. 2025) (quoting *Bhattacharya v. Murray*, 93 F.4th 675, 700 (4th Cir. 2024)) (internal quotations omitted). To have a protected property interest, a person must have "more than a unilateral expectation"; rather he must "have a legitimate claim of entitlement," and such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Here, Medic offers no statute, rule, or mutually explicit understanding entitling him to enter Northlake Mall, a privately owned shopping center; his asserted interest in continued access is at most the kind of unilateral expectation that *Roth* holds insufficient. Nor did the ban deprive Medic of a protected liberty interest. Under *Roth*, a person is not deprived of liberty when he is denied a single opportunity yet "remains as free as before" to pursue others, absent a stigmatizing charge against his good name or a disability that broadly forecloses his freedom to take advantage of other opportunities. 408 U.S. at 573–75. Excluding Medic from one private mall neither stigmatized him nor restricted his freedom to go elsewhere. Nor does the loss of his job with a mall tenant constitute a deprivation of a protected liberty interest. The termination of one position, absent an injurious

charge by a state actor or a state-imposed bar that forecloses a range of employment opportunities, does not implicate the liberty interest to pursue an occupation.[4] *See id.* Moreover, none of the Defendants was Medic's employer. He worked for a mall tenant, Go Green CBD, so the loss of that position was a collateral consequence of a privately issued ban, not a deprivation of any protected interest by Defendants. And the ban itself was issued by PSC, a private security company, not by Officer Tolman or Officer Travis. Doc. No. 12-10 at 1. Because Medic has not plausibly alleged that he had a protected liberty or property interest in access to the mall,[5] the Court will dismiss his Fourteenth Amendment claim.

**D. Section 1983 and *Monell* claims as to Defendant City**

Medic next alleges that City violated his First and Fourteenth Amendment rights and is liable under *Monell* because the actions taken by Officers Tolman and Travis were "pursuant to policy, practice, or failure to train and supervise." CAC at 4.

"[M]unicipal liability attaches only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official

---

[4] "Although an employee may have a constitutionally protected property interest in employment, that interest 'does not extend to the right to possess and retain a particular job or to perform particular services.'" *Burch v. NC Dep't of Pub. Safety*, 158 F. Supp. 3d 449, 458 (E.D.N.C. 2016) (quoting *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990)) (internal quotations and additional citations omitted). The Fourth Circuit is "reluctant to recognize multiple property interests within the same employment relationship," describing such disfavored interests as "entitlements within entitlements to perform specific functions." *Id.* (quoting *Fields*, 909 F.2d at 97). Rather, the "property interest" is in continued employment generally. *Fields*, 909 F.2d at 97.

[5] To the extent that Plaintiff may be alleging that he has a protected property or liberty interest in the mall as a patron, he does not. *See, e.g., Phillips v. S. Coast Plaza,* No. SACV1800812AGJDEX, 2018 WL 6074583, at *2 (C.D. Cal. July 17, 2018), *aff'd,* 785 Fed. Appx. 474 (9th Cir. 2019) ("the inability to shop at a private mall … doesn't implicate *any* protected interest.") (emphasis added); *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 23 (1986) ("a consumer who purchases food in a grocery store is "paying" for the store's rent, heat, electricity, wages, etc., but no one would seriously argue that the consumer thereby acquires a property interest in the store.").

policy." *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023) (quoting *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999)). This level of policymaker involvement is essential because, as the Supreme Court has emphasized, *Monell* liability is not simply respondeat superior liability repackaged. *Id.* (citing *Monell,* 436 U.S. at 691). Moreover, municipalities are liable only for "their *own* illegal acts." *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis in original). Therefore, "to hold a municipality liable for a constitutional violation under *Monell*, a plaintiff must prove 'the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.'" *Id.* (quoting *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994)).

A municipal policy or custom may arise in several ways: (1) through an explicit policy, "such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Id.* (quoting *Starbuck v. Williamsburg James City Cnty. Sch. Bd.,* 28 F.4th 529, 533 (4th Cir. 2022)) (additional citation omitted).

Here, although Medic asserts that the officers acted "pursuant to a policy, practice, or failure to train and supervise," such a conclusory allegation fails to plausibly allege *Monell* liability. Indeed, Medic alleges only that Officer Tolman was one of the officers involved in the incident that resulted in his being banned from the mall and sent PSC a "false" email describing her observations of the incidents between him and mall security on May 28 and 29, 2023. CAC at 3. Beyond advising Medic to "let the situation go," the email reflects that Officer Tolman took no other action toward him, and Medic does not allege otherwise. *See* Doc. Nos. 12-5, 12-6. Medic

describes similarly limited interactions with Officer Travis, asserting only that he "threatened" to call mall security if Medic continued recording him on private mall property. *See* Doc. No. 12-9 at 1. Officer Travis is also listed as the responding CMPD officer on the permanent ban issued by mall security on July 9, 2023. Doc. No. 12-10.

Taking the factual assertions as true, Medic does not plausibly allege the officers acted under any written ordinance or regulation, that a "failure to train" occurred or resulted in deliberate indifference to the rights of citizens, or that the officers acted through a persistent and widespread practice that could reasonably constitute a custom. Accordingly, these claims will be dismissed.

**E. Intentional Infliction of Emotional Distress**

In Medic's final claim, he alleges Defendants' conduct was "extreme, outrageous, reckless, and intended to cause emotional distress." CAC at 4.

In North Carolina, intentional infliction of emotional distress ("IIED") involves "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Morgan v. City of Charlotte*, No. 322CV00003KDBDCK, 2023 WL 4002524, at *16 (W.D.N.C. June 14, 2023) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 487–88 *disc. review denied*, 317 N.C. 334 (1986)). For conduct to qualify as extreme and outrageous, it must go far beyond the limits of acceptable behavior—so much so that a civilized society would view it as "atrocious[] and utterly intolerable." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677 (1985). Courts interpreting *Briggs* have emphasized that this is a very high bar and have consistently required a showing of truly egregious behavior before finding that the standard is met. *Dobson v. Harris*, 134 N.C. App. 573, 578–79 (1999), *rev'd on other grounds by,* 352 N.C. 77 (2000).

In other words, "liability clearly does not extend to mere insults, indignities, [and] threats ...." *Karanik v. Cape Fear Acad., Inc.*, 608 F. Supp. 3d 268, 290 (E.D.N.C. 2022) (quoting *Wagoner v. Elkin Cty. Schs.' Bd. of Educ.*, 113 N.C. App. 579, 586 (1994)). *Compare Dobson,* 134 N.C. App. at 578–79 (falsely reporting child abuse does not constitute extreme and outrageous conduct), *and Karanik,* 608 F. Supp. 3d at 290–91 (suffering "insult and indignity" as a result of allegedly retaliatory conduct does not plausibly allege IIED), *with Eubanks v. State Farm Fire & Cas. Co.,* 126 N.C. App. 483, 485 (1997) (soliciting the commission of murder is an extreme and outrageous act), *Miller v. Brooks,* 123 N.C. App. 20, 29–30 (1996) (breaking into a plaintiff's house to install a hidden video camera is extreme and outrageous conduct), *and Bradley v. Ramsey*, 329 F. Supp. 2d 617, 627 (W.D.N.C. 2004) (IIED plausibly alleged where Plaintiff claimed that certain public officials used their "elected positions to retaliate against and blackmail" him for reporting their "illegal activity").

Hull did not manage Northlake Mall until 2025, approximately two years after Medic was banned by PSC, and its only interaction with Medic is through PSC, which allegedly told him via email that the mall ban was active and would be enforced by it, CMPD, and "mall management" if he returned. Doc Nos. 12-12; 32 at 4. The CMPD officers' interactions with Medic include allegedly (1) contacting mall security when he refused their request to stop filming them inside the mall, (2) falsely accusing him of aggressive and taunting behaviors, and (3) writing an "fictitious" email. CAC at 3. And Medic alleges no interaction at all with Spinoso. Put simply, Medic alleges no conduct by any of the Defendants that could plausibly amount to IIED. Accordingly, this claim will be dismissed as to all Defendants.

### F. Plaintiff's Motion for Default Judgment as to Defendant PSC

Separate from the foregoing motions to dismiss, Medic has moved for default judgment against PSC, which has not appeared or otherwise responded to the CAC and against which the Clerk has entered default (Doc. No. 42).

Entry of default does not entitle a plaintiff to judgment as a matter of course. A defaulted party "is deemed to have admitted all well-pleaded allegations of fact contained in the complaint." *Doe v. Nash Cnty. Bd. of Educ.*, No. 5:24-CV-259-D, 2025 WL 820671, at *11 (E.D.N.C. Mar. 13, 2025) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)) (additional citations omitted). However, while a defendant may not then challenge "the factual allegations of the complaint, he does not 'admit' the legal conclusions." *Weft, Inc. v. G.C. Inv. Associates*, 630 F. Supp. 1138, 1141 (E.D.N.C. 1986), *aff'd sub nom. Weft, Inc. v. Georgaide*, 822 F.2d 56 (4th Cir. 1987); *see also Ryan,* 253 F.3d at 780; *Thomson v. Wooster*, 114 U.S. 104, 113 (1885) (a default judgment may be entered only "according to what is proper to be decreed upon the statements of the bill assumed to be true," and not "as of course according to the prayer of the bill."). Thus, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," *Doe,* 2025 WL 820671, at *11 (quoting *Ryan,* 253 F.3d at 780) (additional citation omitted). The Court must therefore "determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780 (citing *Weft*, 630 F. Supp. at 1141); *accord J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 705–06 (W.D.N.C. 2012).

Applying that standard, the well-pleaded allegations do not support the § 1983 relief Medic seeks against PSC. He asserts against PSC the same First Amendment retaliation and procedural due process claims he asserts against the other Defendants, and both arise under §1983, which

reaches only conduct undertaken “under color of state law.” *West*, 487 U.S. at 48. Whether or not PSC acted under color of state law is a legal conclusion, not a well-pleaded fact, and PSC’s default does not admit it. Nor do the well-pleaded facts establish it. PSC is a private security company, and the conduct Medic attributes to it—escorting him from the premises and issuing a Criminal Trespass Warning and permanent ban for violating the mall’s private code of conduct and filming officers—is private conduct of the same character the Court has already found insufficient to constitute state action as to Hull and Spinoso.

Further, Medic’s assertion that CMPD officers contacted PSC’s security personnel before PSC acted, and that PSC later advised him the ban would be enforced in part by CMPD, shows at most that the State acquiesced in or lent support to a decision PSC made for its own private reasons, not that the State coerced or dominated that decision. Such involvement does not make PSC’s conduct fairly attributable to the State. *See DeBauche*, 191 F.3d at 507; *Andrews*, 998 F.2d at 217. Because Medic has not plausibly alleged that PSC acted under color of state law, his § 1983 claims against PSC fail, even on PSC’s default.

Finally, Medic’s IIED claim against PSC fails for the reasons given above in addressing that claim, as issuing a trespass warning and permanent ban for an asserted code of conduct violation is not the sort of “atrocious[] and utterly intolerable” conduct North Carolina law requires. *Briggs,* 73 N.C. App. at 677.

Accordingly, because the allegations, even accepted as true, do not support the relief Medic seeks, his motion for default judgment against PSC will be **DENIED**, and his § 1983 and IIED claims against PSC will be **DISMISSED** for failure to state a claim.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (Doc. Nos. 31, 40, 51, 67) are **GRANTED**;
2. Plaintiff's Motion for Default Judgment (Doc. No. 46) is **DENIED**;
3. Plaintiff's claims against Defendant PSC are **DISMISSED**; and
4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 24, 2026

Kenneth D. Bell
United States District Judge